[Civ. No. 28838.   Second Dist., Div. Two.   Jan. 26, 1966.]

CALEB MITCHELL et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

[Civ. No. 28839.   Second Dist., Div. Two.   Jan. 26, 1966.]

ANNA M. BURNS et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

[Civ. No. 28840.   Second Dist., Div. Two.   Jan. 26, 1966.]

ALAN F. ARMSTRONG et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

(Consolidated Cases.)

Bewley, Knoop, Lasseleben & Whelan and Martin E. Whelan, Jr., for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Weldon L. Weber and John J. Tully, Jr., Assistant City Attorneys, for Defendants and Appellants.

HERNDON, J.—The various plaintiffs have appealed from judgments entered in three separate cases consolidated for trial. Defendants have also appealed from a portion of the judgment relating to the allowance of interest. Since joint briefs have been filed herein and the issues presented for our consideration are common to all three cases, no purpose would be served by our delineating in detail the particular parties hereto. It is sufficient to state that each of the plaintiffs is either a retired member of the Los Angeles Fire or Police Department or the widow of a former member of one of such departments.

Most of the issues initially presented by plaintiffs' complaints filed herein were disposed of in *Henry* v. *City of Los Angeles,* 201 Cal.App.2d 299 [20 Cal.Rptr. 440]. We regard two of their remaining contentions urged before the trial court and again on this appeal as being without substantial merit.

Plaintiffs' first contention relates to the effect of the 1957 amendment to section 181½ of the Los Angeles City Charter. The history of the various sections of the charter dealing with pension rights has been spelled out in the *Henry* case, *supra,* and in *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438 [326 P.2d 484]. We shall summarize and include only so much of this background material as is required to understand plaintiffs' contentions and the reasons for their rejection by the trial court.

Since January 17, 1927, section 181 of the charter has drawn a distinction between members of the fire or police departments who entered the service prior to or subsequent to that date. Those who had entered the service prior to the 1927 amendment continued to be entitled to receive pensions after 20 years' service, such pensions to be 50 percent of the applicable base for 20 years' service, plus 1⅔ percent for each additional year, with a maximum of 66⅔ percent for 30 years of service. Those who thereafter entered the service were to be entitled to a pension only after 25 years of service

computed upon a similar 50 percent of base plus $1\frac{2}{3}$ percent for each year thereafter until a maximum of $66\frac{2}{3}$ percent was reached after 35 years. Clearly such amendment was entirely valid and in nowise discriminatory against persons voluntarily entering the service thereafter even though they were required to make the same contributions from their salary.

In 1947, section 181 was amended to improve the pensions of the post-1927 members by providing eligibility for retirement after 20 years of service upon pensions of 40 percent of base plus 2 percent additional for each year of service over 20 years and less than 25 years. These same percentages remain unchanged today, and, as indicated, are in no sense discriminatory or unfair to the members involved.

However, in 1927 when the new 25-year pension schedule was adopted, applicable to members thereafter entering the service, section $181\frac{1}{2}$ also was enacted. It was applicable only to the new "post-1927" members and provided that the maximum pension payable thereunder would be $1,800 annually. While probably not illegally discriminatory, the effect of this section clearly would be to adversely affect only those post-1927 members of the department who at the time of their retirement held higher ranks therein with resultant higher salary bases.

In 1947, section $181\frac{1}{2}$ was amended to remove the specific maximum figure but it was provided in its stead that no post-1927 member should receive a pension in an amount greater than the maximum payable to one having like years of service occupying the position of Battalion Chief of the Fire Department or Captain of the Police Department. Now the "discriminatory" aspects of section $181\frac{1}{2}$ were completely manifest, for only those members of the departments holding ranks higher than those specified would be affected thereby. As to these members equal benefits would not be received on the basis of their salaries, their contributions and their years of service.

In 1957, to eliminate this unequal treatment within the ranks of post-1927 members, section $181\frac{1}{2}$ was completely rewritten and now provides, "The limitations of the amount of maximum pension payable pursuant to Section 181 of this Article shall apply uniformly to all members of the Fire and Police Departments." It will be recalled, of course, that the inequalities created by section $181\frac{1}{2}$ in its previous forms never applied to pre-1927 members. Nevertheless, plaintiffs

argue that the amendment of section 181½ that eliminated this disparity of treatment among post-1927 members also eliminated by implication the two separate pension computation methods established in section 181 (which was not amended) and therefore post-1927 members are entitled to the same rights as pre-1927 members. The insubstantiality of such a contention is patent and the trial court was entirely correct in rejecting it.

Plaintiffs' second contention on this appeal is that section 183 of the charter which establishes widows' pensions should be so construed as to require that the pensions payable to those widows whose right thereto first matured upon their husband's death *after his retirement* should be computed upon salary bases in effect at the time of his death rather than at the time of his retirement. In his well-reasoned memorandum opinion, the trial judge aptly described plaintiffs' arguments in support of this proposition "extremely ingenious," but found them to be unconvincing. We agree. Sections 183 and 184 of the charter provide as follows:

"Sec. 183. Whenever any member of the Fire or Police Department shall die as a result of any injury received during the performance of his duty, or from sickness caused by the discharge of such duty, or after retirement, or while eligible to retirement from such department on account of years of service, then an annual pension shall be paid in equal monthly installments to his widow, or child or children, or dependent parent or parents, in an amount equal to one-half (½) of the average monthly rate of salary assigned to the ranks or positions held by such member during the three years immediately preceding the time of his death or the date of his retirement from active duty in such department. Said pension shall be paid to the widow during her lifetime or until she remarries, and thereafter a pension shall be paid in equal monthly installments, in an amount equal to one-half (½) of the average monthly rate of salary assigned to the ranks or positions held by such member during the three years immediately preceding the time of his death or the date of his retirement from active duty in such department to the legally appointed guardian of the child or children of such deceased member until such child or children shall have attained the age of eighteen years, or to his child or children should there be no widow until such child or children shall have attained the age of eighteen years, or to his dependent

parent or parents during their lifetime or during such dependence, should there be no widow or child. Provided, however, that during the lifetime of such widow or until she shall remarry, an additional amount shall be paid to such widow for each child during the lifetime of such child, or until such child shall have married or reached the age of eighteen years, as follows: For one child twenty-five per cent (25%) of the pension allowed as hereinafter set forth; for two children, forty per cent (40%) of such pension; and for three or more children, fifty per cent (50%) of such pension. Provided, further, however, that no widow of a pensioner shall be entitled to a pension unless she shall have been married to such deceased pensioner at least one year prior to the date of his retirement; and provided, further, that no widow of a member of the Fire or Police Department eligible for retirement from such department who dies from causes other than those arising out of or from the performance of his duties, shall be entitled to a pension unless she shall have been married to such deceased member for at least one year prior to the date of his death, and provided, further, that if such widow, child or children shall marry, then the pension paid to the person so marrying shall cease, and provided, further, that should the dependency of such parent or parents terminate, then the pension paid to such dependent parent or parents shall cease. Provided, however, that the pension payable hereunder to the widow, child or children or dependent parent or parents of a member of the Fire or Police Department who became a member of such department on or subsequent to January 17, 1927, who, after retirement on account of years of service, but having served less than twenty-five years in the aggregate prior to the time of such retirement, or who, while eligible to retirement from such department on account of years of service, but prior to having served twenty-five years in the aggregate shall die from causes other than those arising out of or from the performance of his duties, shall not exceed the amount of the pension which such retired member was receiving at the time of his death or which such member eligible for retirement would have been eligible to receive at the date of his death under the provisions of Sections 181 and 181½ of this charter, and the additional amount payable to such widow on account of children pursuant to the provisions of this section shall be the applicable percentage hereinabove set forth of a pension in such maximum amount.''

"Sec. 184. That all pensions granted in accordance with the provisions of Sections 181, 182, 182¼, 183 and 183½ hereof shall remain in full force and effect for the period granted, and any increase or decrease of salaries of active members of the Fire and Police Departments shall not in anywise affect the amount of the pensions to be paid to retired members of such departments, or to any other person pensioned pursuant to the provisions of this article, nor shall the amount of such pensions be changed for any other reason, except as otherwise specifically provided in this article."

Plaintiffs' argument proceeds along the following lines: First, it has been held that language in a pension statute which fixes a pension at a certain proportion of the "average monthly rate of salary assigned to the ranks or positions held by such member," defines only the rank and not the salary. Therefore, such a provision, standing alone, has been interpreted in many cases to provide for a pension which fluctuates with increases in the salaries attached to the rank involved even after retirement and the commencement of pension payments. (In the case of Los Angeles, see *Jones* v. *Cooney*, 82 Cal.App. 265 [255 P. 536].)

Plaintiffs concede that despite the inclusion of such language in section 183, a widow's pension no longer fluctuates *after* it has once been established by reason of the express provisions of section 184 of the charter. (Also see, *Abbott* v. *City of Los Angeles, supra*, 50 Cal.2d 438, 446-447.) ▮ They contend, nevertheless, that a widow's pension is separate and distinct from her husband's and therefore its computative base should be deemed to "fluctuate" throughout the period of his retirement but prior to the time her individual eligibility is established by reason of his subsequent death.

We regard the trial court's rejection of such contention to be correct. First, it is clear that when sections 181 and 183 of the charter were amended in 1927, the purpose thereof was merely to alter the basis for computing the pensions and not to establish their nonfluctuating character, i.e., the termination of the fluctuating nature of the pensions was accomplished by the express provisions of section 184, and the amendments to sections 181 and 183 were unnecessary and irrelevant thereto. As stated in the *Abbott* case, *supra*, at pages 446-447:

"Widows' pension rights were unaffected by section 184

[as adopted in 1925], and continued upon a fluctuating basis until January, 1927, when, by amendment, the section was in terms made applicable to the pensions of widows and other members of families. (Stats. 1927, pp. 2023-2024.) Widows' pensions granted thereafter have been paid upon a fixed basis. *Also by 1927 amendment, the basis* of the fixed retirement and widows' pensions became average salary received by the members over the three-year period immediately preceding retirement, rather than being related to the preceding one-year period only.'' (Italics added.)

Therefore, when in 1947, sections 181 and 183 were again amended to provide that pensions would be based upon ''the average monthly rate of salary assigned to the ranks or positions held by such member during the three years preceding his retirement'' rather than ''the average salary received by the member during the three-year period preceding his retirement,'' the effect thereof was merely to grant all pensioners a more favorable basis for computing their pensions and not to revive a partial or quasi-fluctuating pension for certain widows. In essence, it was so determined in *Henry* v. *City of Los Angeles, supra*, 201 Cal.App.2d 299, 322.

In addition, it is equally clear that the interpretation urged by appellants would violate both the spirit of section 184 and its specific terms. Section 184 expressly provides: ''That all pensions granted in accordance with the provisions of Sections 181, 182, 182¼, 183 and 183½ hereof shall [1] remain in full force and effect for the period granted, and [2] any increase or decrease of salaries of active members of the Fire and Police Departments *shall not in anywise affect* the amount of the pensions *to be paid to retired members* of such departments, or [the amount *of pensions to be paid*] *to any other person* pensioned pursuant to the provisions of this article . . .'' (Italics added.)

It is to be remembered that the purpose of establishing pensions for public employees ''is said to be to induce competent persons to enter *and remain* in public service.'' (Italics added.) (*Benson* v. *City of Los Angeles*, 60 Cal.2d 355, 361 [33 Cal.Rptr. 257, 384 P.2d 649].) In addition, of course, since a widow's pension rights are derivative, it may not be claimed ''that the widow has a separate, vested right to a pension that is different from her community interest in her husband's pension rights.'' (*Packer* v. *Board of Retirement*, 35 Cal.2d 212, 216 [217 P.2d 660].) It is the husband's performance of services for his employer

that supplies the consideration for the payment of pension benefits. This consideration ceases when he ceases to perform further services.

██ It appears uncontrovertible that the authors of section 184 wished to make certain that any future decision to increase the salaries of active employees should not affect pension benefits to be paid by reason of the former employment of persons whose rendition of services had been fully completed prior to such salary increase. That is to say, while it is often convenient to refer to the payments made to a retired member or to his widow or to his minor children or to his dependent parents as if these payments constituted separate and distinct pensions, nevertheless each of these various payments stems from one pension plan arising from the rendition of services by the member himself.

Although the percentages of the base sum payable to the several potential beneficiaries will vary from time to time dependent upon which of the beneficiaries is presently entitled thereto, we regard it as clear that section 184 was designed to, and does, permanently establish the base sum as of the time the employee ceases to render services. As a practical matter, the payments to the various potential beneficiaries may not actually be computed until after the conditions precedent to these payments have been fulfilled. This fact, however, should provide no basis for changing the base sum itself by reason of changes in the salaries of active members after the member whose services support all the pension rights has ceased to render such services.

The following may serve as an example of the anomalous results that would result from an application of plaintiffs' process of computation. Member A retires after 25 years of service. His wife immediately begins to share his 50 percent retirement payment by reason of its community property character. However, for the next 10 years neither the member nor his wife is entitled to have this pension increased by reason of the several salary increases that have been awarded to active members of the departments holding the same ranks or positions as did the retired member during the three years preceding his retirement.

Member B, who also has rendered 25 years of service on the date that Member A retired, determines to remain on the force and continues to render further valuable services to his employer for an additional 10 years during which the salary attached to his rank increases. At the end of 10 years, both

members die. Appellants' contention would require that the
benefits now payable to the two respective widows should be
identical (assuming the same ranks are involved), despite the
fact that Member A had enjoyed the benefits of retirement
for the 10 years during which Member B continued to render
services and during which the salaries attached to the respec-
tive ranks were increased. We cannot accept the strained and
artificial construction that would produce such a result.

■ The conclusion that a widow's pension benefits are to
be determined by reference to her husband's benefits is
strengthened by reference to that portion of section 183 itself
which provides that in the cases of post-1927 members who
retire after 20, but less than 25, years of service, the pay-
ments to be made to their widows upon their death "shall not
exceed the amount of the pension which such retired member
was receiving at the time of his death." The reason for such
express provision is clear since in its absence the basic
widow's payment would be established at 50 percent of the
base sum established at the time of the member's retirement,
whereas, in the case of post-1927 members with just 20 years
of service, their own pension would have been only 40 per-
cent of such base sum. It is clear that the authors of this
section intended to insure that no widow of a 20-year member
could argue that she was entitled to receive payments in an
amount equal to that to which the widow of a 25-year mem-
ber would be entitled under the same circumstances.

Plaintiffs' reference to the fact that section 183½ provides
that the payments to the widow of a member who dies while
on a disability pension (§ 182¼) shall be "in an amount
equal to forty per cent (40%) of the highest salary . . . at-
tached to the rank of policeman or fireman at the date of
such member's death" actually weakens rather than
strengthens their arguments herein. Not only are the bases
for computing disability pensions different from those relat-
ing to length of service pensions, but the considerations
which might properly affect the determination of the pension
to be paid to the widow of such disabled member are also
different.

However, and more importantly, the fact that section
183½ was enacted, and section 183 was amended, both effec-
tive June 16, 1947, offers convincing evidence that the
authors knew how to spell out a provision for a widow that
would expressly entitle her to a different base sum than had
governed her husband's pension. That they *did* so in section
183½ and did *not* do so in section 183 increases our assur-

ance that it was not their intention that section 183 should be artificially construed to achieve such a result.

The final determination made by the trial court that remains for our consideration has been challenged by both plaintiffs and defendants. As heretofore indicated, sections 181 and 183 of the charter were amended in 1947 to substitute a different method for computing the base sum to which the various pension percentages were thereafter to be applied. Prior to 1947, the base sum was to be "the average monthly rate of salary which such member shall have received during the three years immediately preceding the date of his retirement." After 1947, it was to be "the average monthly rate of salary assigned to the ranks or positions held by such member during the three years immediately preceding the date of his retirement."

However, defendants continued to compute their pension payments as if the two formulas were the same until the decision in the case of *Henry* v. *City of Los Angeles, supra,* 201 Cal.App.2d 299. Following this decision, defendants recomputed the pensions of the plaintiffs based upon the court's construction of the 1947 formula and made payment of such additional amounts as had accrued to each plaintiff individually through May 31, 1962.[1]

Defendants caused each plaintiff to receive a notice accompanying each payment which provided:

"Enclosed is check for accrued but unpaid pension benefits due you, without interest thereon, calculated in accordance with our interpretation of the March 14, 1962 decision of *Henry* v. *City of Los Angeles.* Since Section 3290 of the Civil Code of the State of California provides that 'Accepting payment of the whole principal, as such, waives all claim to interest', it is your privilege to either accept or reject the enclosed check."

Each plaintiff cashed the check or checks presented, but it is agreed that such "acceptance" was not intended as a *voluntary* waiver of all claim to interest. That is to say, the parties stipulated, in effect, that unless the city had the right to force such election upon its pensioners at the time it finally determined to pay to them the exact amounts it had

---

[1]Some of these payments were actually less than the amount of the principal then owing by reason of miscomputations apparently resulting from the use of second, rather than first, claims filed with the defendants requesting such payments. These errors were subsequently corrected and we do not now understand plaintiffs to claim further errors existent in connection with these payments.

theretofore improperly withheld from them, then the plaintiffs did not agree that receipt of the amounts tendered constituted a voluntary waiver of their right to collect the damages, i.e., interest, due and owing by reason of such wrongful withholding of their past due pension payments.

The trial court correctly held that section 3290 was never intended to authorize a forced election in instances involving parties whose relationships were of the type here presented. One's sense of reason and fair play rebels at the thought that public officers, charged with legally and equitably administering a pension plan, may obtain ''coerced waivers'' from the beneficiaries of such plan by the means here adopted. As indicated by the notice that accompanied the tendered checks, it had already been judicially determined by the decision in *Henry* v. *City of Los Angeles, supra,* 201 Cal.App.2d 299, that plaintiffs were entitled to the payments of the principal amounts which theretofore had been wrongfully withheld.

Further, as pointed out in *Benson* v. *City of Los Angeles, supra,* 60 Cal.2d 355, 364, the earlier case of *Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d 438, 467-468, followed as it was by the 1959 amendment by section 3287 of the Civil Code, had indicated rather clearly that pensioners recovering wrongfully withheld payments would also be entitled to demand and receive the interest that had accrued thereon prior to the date of such payments.

It is true, of course, that the defendants' contentions regarding the duty to pay interest on past due pension payments had not been finally rejected prior to the tender in the instant case, but such fact does not strengthen their present position.     For public officials to threaten to withhold the payment of funds which they concede are due and owing to pensioners unless the latter forfeit other sums to which they are entitled, or their claim thereto, is not in accord with the duties and obligations of such officials.

A more serious question is presented by plaintiffs' contentions that the trial court erred in allowing them interest on unpaid pension payments only to the date when the checks were tendered that purportedly were directed solely to payment of the principal amounts then owing. If this question were open for initial determination, we would seriously consider the merit of defendants' contention that regardless of whether plaintiffs could be forced to elect to waive their claims for interest accrued prior to the date ''the principal

amount" was tendered, nevertheless the city should be allowed to terminate the accrual of further interest by such tender until the issue of plaintiffs' right to any interest has been litigated.

However, a contrary ruling was expressly enunciated in *McConnell* v. *Pacific Mutual Life Ins. Co.,* 205 Cal.App.2d 469 [24 Cal.Rptr. 5], in an essentially identical factual situation. Since a hearing by the Supreme Court was denied in *McConnell,* the judgment therein stands "as a decision of a court of last resort in this state, until and unless disapproved by [the Supreme Court] or until change of the law by legislative action." (*Cole* v. *Rush,* 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137]. See also, *Estate of Brissel,* 218 Cal. App.2d 841, 844 [32 Cal.Rptr. 458]; *Housing Authority* v. *Peters,* 120 Cal.App.2d 615, 616 [261 P.2d 561].)

The court in *McConnell* v. *Pacific Mutual Life Ins. Co., supra,* 205 Cal.App.2d at pages 481-484, defined and resolved the issue as follows:

"3. *Did the Payment of September 15, 1946, Stop Further Accrual of Interest?*

"The old company argues that since the payment made on September 15, 1946, was designated as principal, interest cannot under any circumstances accrue thereafter. The old company argues further that by accepting the payment which was clearly designated as a payment of principal in full, the creditors have waived their interest, or at least have waived any right to interest accruing subsequently. The creditor appellants say that notwithstanding the liquidator's statement that he was paying principal, the payment should be applied first to interest accrued to that date, and the balance applied to principal, leaving a balance of principal which continues to bear interest.

"The contention that interest was waived may be disposed of readily. There is no reason to believe that any creditor intended to relinquish any of his rights to share in this estate. The commissioner's letter of September 15, 1946, stated that acceptance of the principal would not be a waiver of interest. It is argued that the commissioner had no authority to make such a statement. *By the same token, he had no authority to designate as 'principal' any payment which in law should be credited to interest. The letter written by the commissioner cannot be construed as though it were a tender made between parties dealing at arm's length. The commis-*

*sioner acted as a fiduciary administering a fund impartially for the benefit of the persons entitled thereto, and the effect of the distribution is the effect which the law gives to it, regardless of what the commissioner called it.*

"The money paid was owing in any event, either as principal or as part interest and part principal. The rule of *Greva* v. *Rainey,* 2 Cal.2d 338 [41 P.2d 328], that dividends measured by principal alone will be paid until each creditor has received the amount of his principal, affords a reason for designating the first dividend as principal, but this designation should have no bearing on how interest shall eventually be calculated. [Citations.]

"Civil Code, section 3290, provides: 'Accepting payment of the whole principal, as such, waives all claim to interest.' This statute is a rule of construction to be applied between parties dealing at arm's length, where their agreement is to be inferred from the fact that principal is tendered and accepted. This rule cannot be invoked, however, where the conditions of payment are such that the creditor has no opportunity to assert his claim for interest at the time of payment. [Citation.]

" . . . . . . . . . . . . .

"In *Backus* v. *Minor* (1853) 3 Cal. 231, at 233, the Supreme Court said:

." 'Upon a money demand bearing interest, on which have been made payments after maturity, the proper method of computing the interest is stated by Chancellor Kent, in *Connecticut* v. *Jackson*, 1 John. Ch. R. 13. "The rule for casting interest," he says, "when partial payments have been made, is to apply the payment in the first place to the discharge of the interest then due; if the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest is to be computed on the balance of the principal remaining. If the payment be less than the interest, the surplus of interest must not be taken to augment the principal, but interest continues on the former principal, until the period when the payments, taken together, exceed the interest due." ' '

"In the *Backus* case, however, the court affirmed a judgment using a different method of computation because the parties themselves had adopted a different method for their dealings, as established by three or four stated accounts over a two-year period.

"The rule quoted from Chancellor Kent has been the pre-

vailing rule throughout the United States. [Citations.] *The same rule applies whether interest arises from an express contract or as damages.* [Citation.]

"We are aware that an analysis of the facts in *Conner* v. *Bank of Bakersfield,* 183 Cal. 199 [190 P. 801], and *Estate of Hubbell,* 216 Cal. 574 [15 P.2d 503], shows that in each a partial payment was applied to principal, contrary to the general rule. Neither of these opinions discussed the question of how interest should be calculated. Neither should be construed as authority rejecting the rule which was recognized by our Supreme Court in 1853 and is generally applied elsewhere in this country. Cases are not authority for questions not presented or considered. [Citations.]

"We conclude, therefore, that under the law of this state, consistent with the general rule, the payment made September 15, 1946, should be applied first to the payment of interest accrued to that date, and the surplus applied to principal, leaving a balance of principal which will continue to bear interest until further payment is made or tendered." (Italics added.)

The judgments are reversed solely for the purpose of making a proper computation of the interest and otherwise they are affirmed. Plaintiffs to recover their costs on appeal.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied February 23, 1966, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied March 22, 1966.