[Civ. No. 63009. Second Dist., Div. One. Mar. 25, 1982.]

**TODD SHIPYARDS CORPORATION, Plaintiff and Appellant, v. CITY OF LOS ANGELES, Defendant and Respondent.**

COUNSEL

Parker, Milliken, Clark & O'Hara, Everett F. Meiners and Bruce D. May for Plaintiff and Appellant.

Ira Reiner, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Ronald A. Tuller, Assistant City Attorneys for Defendant and Respondent.

**OPINION**

**DALSIMER, J.**—Plaintiff and appellant, Todd Shipyards Corporation, appeals from a judgment of the superior court entered in favor of defendant and respondent, City of Los Angeles.

Appellant brought an action to recover business taxes overpaid to respondent under Los Angeles Municipal Code section 21.190 for the years 1963 through 1973. Respondent voluntarily refunded to appellant $156,198.83 in overpaid business taxes for the years 1966 through 1973 under an agreement which permitted appellant to seek interest on the amount refunded. Each party then moved for summary judgment. The sole issue before the superior court in said motions was whether respondent was liable for interest on the amounts refunded to appellant. The court denied appellant's motion for summary judgment and granted that of respondent, and this appeal ensued.

## STATEMENT OF FACTS

The facts are undisputed. Appellant operates a shipyard within the City of Los Angeles where it constructs, overhauls, modifies, and repairs oceangoing vessels. Work performed for the United States government was done pursuant to contracts containing "passage of title" clauses which provided that once material or components required under the contract were acquired or produced by appellant or appropriated to the contract, title to such material or components passed to the United States government.

With respect to "passage of title" contracts, respondent took the position that there was a sale of goods only to the extent that the title to the material or components passed to the United States government. After title passed, all payment for work performed by appellant was considered to be service income subject to tax under Los Angeles Municipal Code section 21.190 at a higher rate than that imposed on sales. Commencing with tax year 1963, appellant, under protest, paid its business taxes in accordance with respondent's position, and in 1968 commenced this action for refund thereof. The parties agreed to hold the action in abeyance pending the outcome of litigation involving other government contractors contesting the same issue. It was ultimately decided in *ITT Gilfillan, Inc.* v. *City of Los Angeles* (1977) 72 Cal.App.3d 421 [140 Cal.Rptr. 193] that gross receipts arising after passage of title to the material and components were part of the sale of goods and should not have been taxed under Los Angeles Municipal Code section 21.190.

██ ██ The only question to be decided on this appeal is: May a taxpayer who recovers a city business tax paid under protest also recover prejudgment interest under Civil Code section 3287, subdivision (a)?

We hold that he may.

## DISCUSSION

Civil Code section 3287, subdivision (a), reads as follows: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to the recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

Respondent argues that Civil Code section 3287, subdivision (a), has no application to this case because of the "home rule doctrine."

In *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137], the court said: "At all times since adoption of the Constitution in 1879, section 11 of article XI has specified that '*Any* county, *city*, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.' (Italics added.) In 1896 section 6 of article XI was amended to provide a limited amount of autonomy for freeholders' charter cities, and in 1914 sections 6 and 8 of article XI were amended to permit such cities, by appropriate charter amendments, to acquire autonomy with respect to all municipal affairs. A city which adopted such 'home rule' amendments thereby gained exemption, with respect to its municipal affairs, from the 'conflict with general laws' restrictions of section 11 of article XI. [¶] As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation (the preemption doctrine). [Citations.]"

"Because the various sections of article XI fail to define municipal affairs, it becomes necessary for the courts to decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern." (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158].)

California courts have repeatedly applied section 3287 of the Civil Code to municipalities even though the obligations upon which the actions were based were indubitably municipal affairs, such as wages and pension plans for city employees. (*Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252, 262-263 [90 Cal.Rptr. 169, 475 P.2d 201] [wages]; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 366 [33 Cal.Rptr. 257, 384 P.2d 649] [pensions]; *Squire* v. *City and County of San Francisco* (1970) 12 Cal.App.3d 974, 982 [91 Cal.Rptr. 347] [wages]; *Mullins* v. *Toothman* (1965) 231 Cal.App.2d 756, 769 [42 Cal.Rptr. 254] [wages]; *Adler* v. *City of Pasadena* (1964) 229 Cal. App.2d 518, 524-527 [40 Cal.Rptr. 373] [pensions].)

In *Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 624 [39 Cal.Rptr. 739, 394 P.2d 579], the court noted that Civil Code section 3287 as it existed prior to 1955 did not apply to a "'political subdivision of the State.'" In 1959 the Legislature amplified the meaning of a "political subdivision," describing it as "any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision." The *Mass* court pointed out that prior to 1955 interest could not be obtained against a governmental entity without statutory authority, but that the amendment to section 3287 provides such authority. (*Id.*, at p. 626.) The court held that interest on a teacher's back salary was a proper element of damages. (*Id.*, at pp. 624-627.)

In *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 682 [131 Cal.Rptr. 789, 552 P.2d 749], the court built upon the foundation of *Mass* and held that, in order to recover interest, a claimant must satisfy three conditions: "(1) There must be an underlying monetary obligation; (2) the recovery must be certain or capable of being made certain by calculation; and (3) the right to recovery must vest on a particular day."

Those conditions are met here. The City of Los Angeles has already recognized its legal obligation to repay the funds which were wrongfully collected, that debt was due, in each instance, on the day the respective payments were wrongfully collected, and in each instance the right to recover vested on the same day on which the money was paid. Once the wrongfulness of the tax was ascertained, the right to recovery was established, and the amount of interest became solely a mechanical application of arithmetic.

In disapproving of *Luna* v. *Carleson* (1975) 45 Cal.App.3d 670 [119 Cal.Rptr. 711], the *Tripp* court stated emphatically, "While it is true

that governmental entities traditionally have been immune from liability for interest, Civil Code section 3287 as amended in 1959 provides a clear statutory exception to the general rule, and this exception has been consistently recognized by this court as imposing liability for interest on such entities. [Citations.]" (*Tripp v. Swoap, supra*, 17 Cal.3d 671, 683-684.)

The City of Los Angeles relies upon *Ball* v. *County of Los Angeles* (1978) 82 Cal.App.3d 312 [147 Cal.Rptr. 252], cert. den. (1979) 439 U.S. 1116 [59 L.Ed.2d 75, 99 S.Ct. 1021]. The *Ball* case seems to be comparable to the case at bench, but a close reading discloses a marked dissimilarity. While there was a dispute between the taxpayer and the City of Los Angeles in this case, and the taxes were paid under protest, in *Ball* the taxpayer paid the taxes voluntarily though in error.[1] As soon as the error was discovered by the taxpayer and pointed out to the county, the taxpayer's claim for a refund was processed, verified, and paid. As in the instant case, the taxpayer's claim for interest on the refund was denied on summary judgment, and an appeal ensued. The *Ball* court held that the county would be "liable to Ball for interest for the use of her money only if there is a specific statute authorizing the payment of interest on her refund." (*Id.*, at p. 317.) The court construed several sections of the Revenue and Taxation Code and found that none of them supported the taxpayer's claim to interest. Significantly, however, the court's attention apparently was not directed to Civil Code section 3287, as that statute was not mentioned by the court. Moreover, as the court pointed out in *Ball*, where money is paid by one private party to another under mutual mistake, as it was in *Ball*, interest does not accrue until the mistake is discovered and the demand for restitution is made. (*Id.*, at p. 320.)

■ That the public policy of this state contemplates the payment of interest on wrongfully collected taxes is manifested by article XIII, section 32 of the California Constitution, which states in pertinent part: "After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

■ Although the home rule provision clearly embraces taxation for local purposes and although such power is very broad (see *Weekes* v.

---

[1]For the proposition that different rules exist where the payment of taxes is voluntary, see *Sierra Investment Corp.* v. *County of Sacramento* (1967) 252 Cal.App.2d 339 [60 Cal.Rptr. 519].

*City of Oakland* (1978) 21 Cal.3d 386, 400 [146 Cal.Rptr. 558, 579 P.2d 449]), it does not include the right to take property illegally or to escape the obligation to redress such wrongs once committed.

The judgment is reversed.

Spencer, P. J., concurred.

**TUCKER, J.\***—I dissent.

In the case of *Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386, 426-427 [146 Cal.Rptr. 558, 579 P.2d 449], the court states that "It has been asserted that numerous subjects found to be of statewide concern over the past 80 years all involved activities essentially regulatory in nature.[2] In contrast, on the specific issue of taxation for revenue only, numerous cases declare without equivocation or qualification that imposing taxes for revenue purposes is a municipal affair.[3]"

Taxation for revenue purposes being a municipal affair, logically the payment of a tax refund would be a municipal affair, and there would

---

\*Assigned by the Chairperson of the Judicial Council.

"[2]E.g. *Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036] (city lobbyists regulation, insofar as it impinges upon state regulation of the practice of law); *City of Santa Clara* v. *Von Raesfeld, supra,* 3 Cal.3d 239 [90 Cal.Rptr. 8, 474 P.2d 976] (intercity water pollution control project and its funding procedure); *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158] (organizational rights of city employees); *Pipoly* v. *Benson, supra,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515] (regulation of highway traffic passing through city streets); *Bay Cities Transit Co.* v. *Los Angeles* (1940) 16 Cal.2d 772 [108 P.2d 435] (regulation of interurban transportation system); *Young* v. *Superior Court* (1932) 216 Cal. 512 [15 P.2d 163] (public improvement project extending beyond city limit); *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306 [118 Cal.Rptr. 315] (regional land use planning); *Wilson* v. *City of San Bernardino* (1960) 186 Cal.App.2d 603 [9 Cal.Rptr. 431] (highway development); *County of San Mateo* v. *City Council* (1959) 168 Cal. App.2d 220 [335 P.2d 1013] (annexation procedures); cf., *Century Plaza Hotel Co.* v. *City of Los Angeles* (1970) 7 Cal.App.3d 616 [87 Cal.Rptr. 166] (taxation/regulation of alcohol)."

"[3]*A.B.C. Distributing Co.* v. *City and County of San Francisco, supra,* 15 Cal.3d 566, 571 [125 Cal.Rptr. 465, 542 P.2d 625]; accord *In re Redevelopment Plan for Bunker Hill, supra,* 61 Cal.2d 21 [37 Cal.Rptr. 74, 389 P.2d 538]; *City of Glendale* v. *Trondsen, supra,* 48 Cal.2d 93, 99 [308 P.2d 1]; *Ainsworth* v. *Bryant, supra,* 34 Cal.2d 465, 469 [211 P.2d 564]; *West Coast Adver. Co.* v. *San Francisco, supra,* 14 Cal.2d 516, 524 [95 P.2d 138]; *Ex Parte Helm* (1904) 143 Cal. 553, 557 [77 P. 453]; *Ex Parte Braun, supra,* 141 Cal. 204, 211-212 [77 P. 453]; *Franklin* v. *Peterson, supra,* 87 Cal.App.2d 727, 732 [197 P.2d 788]."

be no right to interest on a tax refund unless specifically provided for by a city ordinance.

I think that the applicability of Civil Code section 3287 turns upon the activity in question being the creation of an express contract.

In this case the respondent, City of Los Angeles, has a refund procedure, section 21.07 of the Los Angeles Municipal Code. The city has no provision for the payment of interest in connection with section 21.07.

All other aspects of the tax procedures for imposition, collection, administration, and refund are prescribed by the Los Angeles Municipal Code.

Respondent has chosen not to provide for the payment of interest in connection with tax refunds. The city has provided for interest in connection with tax delinquencies in Los Angeles Municipal Code section 21.05(e).

Under the doctrine of "the expression of one excludes the other," the failure of the city to provide expressly for the payment of interest on certain refunds while expressly providing for such payment on other refunds indicates an intention to exclude from the omitted refunds the obligation of interest. (*County of Madera* v. *Superior Court* (1974) 39 Cal.App.3d 665, 670 [114 Cal.Rptr. 283]; *Hill* v. *City of Eureka* (1939) 35 Cal.App.2d 154, 158 [94 P.2d 1025].)

California has adopted the rule which requires a specific statutory provision to create governmental liability for interest. "[W]hatever the law may be elsewhere it has always been the rule in California that there is no implied contract of any kind that the state will pay interest on its indebtedness for it is liable only when made so by statute. [Citation.]" (*Gregory* v. *State of California* (1948) 32 Cal.2d 700, 703 [197 P.2d 728, 4 A.L.R.2d 924]; *People* v. *Union Oil Co.* (1957) 48 Cal.2d 476, 480 [310 P.2d 409]; *Ball* v. *County of Los Angeles* (1978) 82 Cal.App.3d 312, 317 [147 Cal.Rptr. 252], cert. den., 439 U.S. 1116 [59 L.Ed.2d 75, 99 S.Ct. 1021]; *Jones-Hamilton Co.* v. *Franchise Tax Bd.* (1968) 268 Cal.App.2d 343, 350 [73 Cal.Rptr. 896].)

In *Ball*, the court states, "The rule has been said to rest upon the practical consideration that the tax collector has no money to pay interest in the absence of statutory authority to establish a fund for that

purpose. [Citation.]" (*Ball* v. *County of Los Angeles, supra*, 82 Cal. App.3d 312, 317.) "Several rationales have been advanced for the rule requiring specific statutory creation of governmental liability for interest on tax refunds. The rule has been said to be based upon the doctrine that requires the state's consent before the state becomes liable. [Citations.]" (*Id.*, at pp. 316-317.)

California courts have applied section 3287 of the Civil Code to municipalities almost exclusively in the areas of wages and pension plans for city employees. This is consistent with the holding in *Ball*, because wages and pension plans are the creation of express contracts, thus distinguishing those activities from governmental liability for interest on tax refunds where there is no express contract.

In the case of *Gibbons & Reed Co.* v. *Dept. of Motor Vehicles* (1963) 220 Cal.App.2d 277, 288 [33 Cal.Rptr. 688, 927], the following language illustrates the rule governing tax cases: "Section 42231 of the Vehicle Code provides for refund of any *fee* or *penalty* which is excessive, erroneous, or not legally due.... Section 42233 describes the manner of making the refund and, again, refers to any *fee* or *penalty*." (Original italics.) It will be observed that these sections make no reference to interest. These statutes are in contrast with provisions of other statutes which specifically refer to interest on refunds, such as the personal income tax law (Rev. & Tax. Code, § 19062), the sales and use tax law (Rev. & Tax. Code, § 6907), and the motor vehicle fuel license tax law (Rev. & Tax. Code, § 8130). The *Gibbons* court states: "Civil Code section 3287 is also unavailing, although as recently amended it includes the State as a debtor against whom interest may be awarded on a judgment for damages which are certain, because, as stated above, under the specific statute allowing refunds of vehicle fees, section 42231 of the Vehicle Code does not provide for interest...." (*Gibbons & Reed Co.* v. *Dept. of Motor Vehicles, supra*, 220 Cal.App.2d at p. 289.)

The court gave as other reasons for denying interest that the refunds were payable from a special fund and that the case involved a proceeding in mandamus. (*Ibid.*) Only the language about interest not being payable in a mandamus proceeding has been subsequently disapproved. (*Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 627, fn. 9 [39 Cal.Rptr. 739, 394 P.2d 579].)

The appellant relies heavily on *Tripp* v. *Swoap* (1976) 17 Cal.3d 671 [131 Cal.Rptr. 789, 552 P.2d 749]. In the *Tripp* case, the court states: "[T]he operation of section 3287, subdivision (a), is further predicated

on the existence of damages. Actions to recover retroactive salary increases and wrongfully withheld pension payments have been held to constitute actions for damages. (*Sanders* v. *City of Los Angeles, supra,* 3 Cal.3d 252, 262-263; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 365-366 [33 Cal.Rptr. 257, 384 P.2d 649].) For purposes of section 3287, subdivision (a), we find wrongfully withheld welfare benefits analytically indistinguishable from salary increases and pension payments." (*Id.,* at p. 682, fn. 12.)

There are strong policy considerations involving welfare that the court considered in applying section 3287 of the Civil Code. The court stated: "In some instances, it may take long periods of time for an applicant to vindicate his entitlement to aid and in the interval the delay inevitably exacts its toll from that portion of our society least able to bear the deprivation." (*Id.,* at p. 683.)

The *Tripp* court observed, "*In Bd. of Soc. Welfare* v. *County of L.A., supra,* 27 Cal.2d 81 [162 P.2d 630], we recognized the strong policy in favor of retroactive payment of welfare benefits. (*Id.,* at pp. 85-86.) This policy has been articulated as 'securing to those entitled to aid the full payment thereof, from the date they were first entitled thereto, regardless of errors and delays by local authorities....' (*Mooney* v. *Pickett, supra,* 26 Cal.App.3d at p. 435 [94 Cal.Rptr. 279, 483 P.2d 1231].)" (*Ibid.*)

In the case of *Mass* v. *Board of Education, supra,* 61 Cal.2d 612, the dismissal of a school teacher was involved. The court stated: "A mandamus action may include monetary damages for breach of contractual or tort obligations. [Citations.] (*Id.,* at p. 626.)" There the court was providing for prejudgment interest as an element of damages pursuant to section 3287 of the Civil Code to compensate for loss of livelihood as a teacher, after the court found a wrongful discharge.

The policy considerations that the courts found in the areas of wages, pensions, welfare benefits, and wrongful discharges of teachers do not apply to the case before this court, as all of the cases cited involved an express contractual obligation.

Respondent's petition for a hearing by the Supreme Court was denied July 7, 1982.