## The Boston and Sandwich Glass Company *vs.* City of Boston.

Manufacturing corporations are not taxable for their personal property, except for their machinery. Such property is to be assessed to the owners of shares in the stock of such corporations.

The poll tax of minors who are in the service of a manufacturing corporation, and receiving salaries, cannot legally be assessed to such corporation.

Payment of taxes to a collector, who has a tax bill and warrant in the form prescribed by law, is to be regarded as a compulsory payment ; and if such taxes were assessed without authority, they may be recovered back in an action for money had and received, although the party made no protest before payment.

In a suit to recover back the amount of taxes paid, without protest, on an illegal assessment, the plaintiff is entitled to interest thereon from the time of demanding repayment ; or from the date of the writ, when no previous demand is made ; but when such taxes are paid under protest, the plaintiff is entitled to interest thereon from the time of payment.

INDEBITATUS ASSUMPSIT for money had and received. The case was submitted to the court on the following statement of facts : "The plaintiffs are a body corporate in this Commonwealth, chartered by *St.* 1825, *c.* 99, for the purpose of manufacturing glass in the city of Boston and the town of Sand

wich.   But they have, and always have had their manufactory, and all their machinery, in Sandwich, and a warehouse, for the general transaction of their business, in Boston.

" In the present action, (commenced on the 7th day of March 1840,) the plaintiffs seek to recover of the defendants $ 1075, under the following circumstances :  Taxes have been annually levied by the defendants upon the personal property of the plaintiffs, from the year 1826 to the year 1839, inclusive — with the exception of the year 1831 — and have been paid into the treasury of the defendants.  The sums, so levied and paid, amounted to $ 1066.  The plaintiffs were also taxed for polls, in 1839 and the two preceding years, to the amount of $ 9, which was also paid, as aforesaid, by them.  These several poll taxes were assessed for the polls of minors then in the service of the plaintiffs, at their warehouse in Boston, and receiving salaries.  The plaintiffs were also taxed by the defendants, (in addition to said taxes on personal property and polls,) for their real estate, in 1836 and the three following years.  No State tax was levied on the plaintiffs, between 1826 and 1839, except in 1829 and 1830.  In 1839, the plaintiffs paid the taxes, levied on their personal property as aforesaid, to the defendants' collector, without any verbal objection to paying the same ; but they immediately presented to said collector the following written protest :  ' Boston, November 2d, 1839.   To Richard D. Harris, Esq., treasurer and collector of the county of Suffolk and city of Boston.  Sir :  The undersigned hereby give you notice that they protest against the payment of $ 141·25, and assessed to them as a tax upon their personal estate, income, &c. for the year 1839, in said city and county, as an illegal tax ; that they pay the same under duress and not voluntarily ; and that they shall institute suit to recover back the same.   Boston & Sandwich Glass Company; by    DEMING JARVES, Agent.'

" This payment and protest were made on the day after said taxes became payable, but before the usual summons, required by law in case of the non-payment of taxes, was issued or issuable.

" The taxes of the years preceding 1839 were paid by the

plaintiffs, without making any objection at the time — the plain tiffs and defendants supposing them to be rightly assessed — upon and after the delivery to the plaintiffs of the usual tax bills, so called, issued by the defendants' collector and treasurer, which tax bills stated the amount of the city and county tax on the plaintiffs, for polls, real estate, personal estate and income, and to which was added a printed statement, which is copied in the margin.*

" If, upon the foregoing facts, the plaintiffs are entitled to recover the whole or any part of the taxes so assessed, and are not barred by the statute of limitations, or otherwise, judgment is to be rendered for such sum as the court shall order. If the plaintiffs are not entitled to recover any part of said amount, judgment is to be rendered for the defendants for their costs."

*Dexter & Barrett*, for the plaintiffs.

*J. Pickering*, (City Solicitor,) for the defendants.

The opinion of the court was given on the 5th of April 1843.

DEWEY, J.   The principal question raised in the present case is, whether the plaintiffs, a corporation established by law " for the purpose of manufacturing glass in the city of Boston and the town of Sandwich," having their manufactory and all their machinery in Sandwich, and a warehouse, for the general transaction of their business, in Boston, can be legally taxed for personal property that they may have on deposit in such warehouse, being raw stock, manufactured articles, or other personal property held by said corporation, as incident to the ordinary course of the business of manufacturing glass.

---

* " By a vote of the town, passed 27th May 1811, the taxes must be paid within sixty days from the time they are issued.   At the expiration of the sixty days, the treasurer by law is directed to issue a summons to those who are then delinquent, and if the tax is not paid in ten days after such summons, with twenty cents for said summons, to issue his warrants to the special collectors, who will receive from delinquents, in addition to the tax, the fees allowed by law on serving executions, viz. : — four per centum on the first one hundred dollars; two per centum on the second one hundred dollars; and one per centum on all over two hundred dollars.   Interest will also be charged.

" RICHARD D. HARRIS, Treasurer and Collector.

"Boston, September 1."

The authority for imposing taxes is to be found in the general provision of the constitution of Massachusetts, and such statutory enactments as the legislature may from time to time adopt, regulating the subject of taxation, and prescribing the time, manner and place, in which taxes are to be assessed. The constitutional provision, found in Part II. *c.* 1, § 1, art. 4, gives authority to the general court " to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said Commonwealth." The legislature, in the enactment of the various provisions found in Rev. Sts. *c.* 7, have regulated the manner in which taxes are to be assessed, as well State taxes, as also county and town taxes : And by the force and effect to be given to these enactments, the present question must be decided. But in examining it, we are to bear in mind the various cases which have arisen at an earlier period, and which mark the course of legislation, either as modifying or changing subsequently the law, or as sanctioning the practical construction applied to it.

A question very similar to the present arose as early as the year 1810, in *Salem Iron Factory Co.* v. *Inhabitants of Danvers*, 10 Mass. 514, in which it was decided that a manufacturing corporation was taxable for its real estate in the town where it is situate, but was not to be assessed for its personal property used in and about its manufactory — the individual corporators being liable to be taxed for their several shares in such property ; and that the personal property was to be taxed in that form. In *Amesbury Woollen and Cotton Manuf. Co.* v. *Inhabitants of Amesbury*, 17 Mass. 461, the question arose under a later tax act, which, as it was contended, had so far changed the place for the assessment of such personal property, as to authorize and require its assessment in the town where the manufactory was situated, without reference to the inhabitancy of the owners of the stock. No question was raised as to the right to tax the corporation, as such, for the personal estate employed in and about the manufactory ; but the sole inquiry seems to have been as to the place where such property should be

taxed ; as to which, the court held that the tax act of 1814 had made no change as to the manner of taxing the personal property of corporations. Thus the new tax act, and the decision of the case arising. under it, apparently sanctioned the decision of this court in the case of *Salem Iron Factory Co* v. *Inhabitants of Danvers.*

The provisions of the Rev. Sts. *c.* 7, under which this assessment was made, do not seem, in this respect, to militate with the earlier tax acts, but, on the contrary, seem designed to carry out the same principle, and are indeed, in some of their details, very significant as to the intention of the legislature respecting the mode of taxing property held by corporations, and requiring the personal property, other than the machinery, to be assessed by a tax upon the shares of the individual members of such corporations. I refer to § 10, clause 2d, wherein it is encted, that " all machinery, employed in any branch of manufactures and belonging to any corporation, shall be assessed to such corporation, in the town or other place where such machinery may be situated or employed ; and in assessing the stockholders, for their shares in any manufacturing corporation, there shall first be deducted from the value thereof the value of the machinery and real estate belonging to such corporation."

The same principle is adopted in reference to the assessment of taxes for erecting and repairing school houses. " All real estate and machinery, belonging to manufacturing corporations, shall be taxed in the school districts where the same are situated and in assessing the shares in such corporation, for the like purposes, the value of said machinery and real estate shall be first deducted from the value of such shares." Rev. Sts. *c.* 23, § 34.

These statute provisions seem clearly to recognize the principle, that the stockholders of a manufacturing corporation are to be taxed for the corporate property, in the form of a tax upon the shares holden by the individual members, except as to so much of the corporate property, as is specifically required to be taxed to the corporation, and in such case, a proper deduction is to be made therefor, from the valuation of the shares.

16 *

Double taxation, being apparently unjust and unequal, will never be presumed to have been within the intention of the legislature, unless the language of the statute imposing such tax shall be clear and unequivocal.

By the general provisions of law regulating the assessment of taxes, all the real and personal estate of manufacturing corporations is liable to taxation. It is not, therefore, a question whether the personal property of such a corporation is exempt from taxation, but a mere question as to the form and mode in which taxes thereon are to be assessed. The whole corporate property might be taxed by an assessment exclusively upon the shares of the stockholders; but the real estate and machinery are supposed to be more properly the subject of taxation by the towns in which the manufactory is situate. The very provision, however, for thus taxing the machinery, being a direct and specific authority, given to the towns in which it is used, to tax the same by an assessment upon the corporation, carries with it a very strong implication, that the personal property of the corporation, other than the machinery, is not taxable by an assessment upon the corporation. The statute, which authorizes the taxation of the machinery to the corporation, requires a deduction of the value of such machinery from the valuation of the shares; and thus double taxation is avoided: but there is no similar provision for making a deduction from the value of the shares, for any other personal property which is held by, and which may be assessed to, the corporation.

Such being the case, and no direct authority being given by statute for taxing the personal estate to the corporation, the court are of opinion that personal property, held in the manner and for the purposes disclosed in the case before us, was not legally taxable to the corporation; but that the same was properly taxable by an assessment on the capital stock· held in shares by the individual stockholders, and which are to be val ued at a sum large enough to include all the personal property of the corporation, except its machinery.

The *St.* of 1839, *c.* 139, was supposed, by the counsel for the defendants, to have modified the preëxisting laws; but upon

a critical examination, it does not seem to us to affect the question we have been considering. The object of this statute appears to be, to define more clearly the place where certain species of property, liable to be taxed, should be assessed — intending more fully to carry out the rule of taxing all stock in trade, stock employed in the business of manufacturing, or the mechanic arts, in the towns where the business is carried on, but not applying to the mode of taxing property held by corporate bodies.

A question has also arisen in the present case, as to the legality of the assessment made upon the plaintiffs for the poll taxes of certain minors in their service at their warehouse in Boston, and who were compensated for their services by salaries paid them by the plaintiffs. By Rev. Sts. *c.* 7, § 1, a poll tax is required to be "assessed upon every male inhabitant of the Commonwealth between the ages of sixteen and seventy years;" and by § 6, "all minors, liable to taxation, shall be taxed for their polls, in the towns where the parents, masters or guardians, who have the control of the persons of such minors, may reside; and if any such minor shall have no parents, master or guardian within this State, he shall be personally taxed for his poll, as if he were of full age; and the poll tax of every other person under guardianship shall be assessed to his guardian, in the town where the guardian is taxed for his own poll." We do not perceive any authority, under this statute, to assess the poll taxes of these minors upon the plaintiffs. There is nothing in the case stated, which indicates any such relation between the plaintiffs and those for whose polls they were taxed, as would justify such a taxation. This assessment was therefore illegal, and ought not to have been enforced against the plaintiffs.

The next inquiry is, whether the payment of these taxes by the plaintiffs was not so far a voluntary act, as to absolve the defendants from all legal liability to refund the amount thus paid. The legal principle relied upon, on this point, is this; that if a party, with full knowledge of all the facts of the case, voluntarily pays money in satisfaction or discharge of a demand unjustly made on him, he cannot afterwards allege such payment to

have been made by compulsion, and recover back the money, even though he should protest, at the time of such payment, that he was not legally bound to pay the same. The reason of the rule, and its propriety, are quite obvious, when applied to a case of payment upon a mere demand of money, unaccompa nied with any power or authority to enforce such demand except by a suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment. If it were not so, the effect would be to leave the party, who pays the money, the privilege of selecting his own time and convenience for litigation ; delaying it, as the case may be, until the evidence, which the other party would have relied upon to sustain his claim, may be lost by the lapse of time and the various casualties to which human affairs are exposed.

The rule alluded to, when properly applied, is doubtless a salutary one, and is not to be departed from, but in cases resting upon a plain and obvious distinction from such as are ordinarily and familiarly known as embraced within it. But the rule has its exceptions ; and cases are not unfrequent, in which the party paying money upon an illegal demand, and knowing it to be such when making the payment, has been allowed to recover back the money. If there be a controlling necessity in the case, arising from the peculiar circumstances under which the money is demanded, the rule does not apply. Thus where money is extorted by duress of goods, assumpsit will lie for it, as was held in the early case of *Astley* v. *Reynolds*, 2 Stra. 916, where the defendant had in pawn plate of the plaintiff, which he refused to deliver without the payment of the money illegally claimed ; and it was held to be a payment by compulsion.

A payment of money illegally claimed by a collector, as tonnage duty or light money, and which the plaintiff paid to obtain a clearance of his vessel, was allowed to be recovered back. *Ripley* v. *Gelston*, 9 Johns. 201. So where money was paid to liberate a raft of lumber detained in order to exact an illegal toll, it was held to be a compulsory payment. *Chase* v. *Dwi-*

*nal*, 7 Greenl. 134. And generally, where money is paid to obtain the possession of property which the party, making the illegal demand, has under his control, such payment will be considered as compulsory. *Shaw v. Woodcock*, 7 Barn. & Cres. 73. *Morgan v. Palmer*, 2 Barn. & Cres. 729.

Another class of cases, and one to which the present case more appropiately belongs, is where the payment of money is made upon an illegal demand by one who has authority to levy upon the property of the person upon whom such demand is made, and by a sale of such property to satisfy and discharge such claim ; and where payment is made upon such a demand, and to prevent such seizure and sale of property, the payment is also compulsory. In most of the cases found in our own reports, where an action for money had and received has been instituted to recover back money paid on an illegal assessment of taxes, either no question was raised, or the facts showed the payment to have been made under a protest. The question seems, however, to have been distinctly presented in the case of *Amesbury Woollen and Cotton Manuf. Co.* v. *Inhabitants of Amesbury*, 17 Mass. 461. This was an action to recover the amount of taxes paid by the plaintiffs, from the year 1814 to 1818, inclusive. The payment for the year 1818 was upon a warrant of distress ; but the payment for the previous years had been made without protest, or any denial of the defendants' right to demand the money ; and it was insisted that the payments, for the years preceding 1818, were voluntary, and being such, the plaintiffs could not recover the money thus paid, although it was made to appear that such taxes were illegally demanded. But the court held that the voluntary payment of a part of the taxes thus assessed did not affect the right of the plaintiffs to recover the amount of money paid by them upon an illegal assessment. The obvious reason of the rule, though not prominently set forth in that case, is clearly stated in the opinion of the court, in the case of *Preston v. City of Boston*, 12 Pick. 7. It arises from the power and authority placed in the hands of a collector of taxes, by virtue of his warrant, to levy directly upon the property or person of every individual whose name is borne on the tax list, in default of payment of the taxes. To use the lan-

guage of the court in the case just referred to, " such warrant is in the nature of an execution running against the property and person of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability." Such being the state of the case, the payments made to a collector of taxes may be considered compulsory, and made under such circumstances as will authorize the party paying the money to recover back the same, if the tax was illegally assessed.

In addition to the sum thus paid, the party will be entitled to recover interest from the date of the writ, or time of demanding repayment, in cases where there was no protest, or denial of right, at the time of paying such taxes ; and when paid under such protest, or denial of liability to pay the same, the interest will be added from the time of paying the taxes.

The plaintiffs are to have judgment for the amount of taxes paid by them within six years next before action brought