*315
 
 Opinion
 

 COBEY, Acting P. J.
 

 Helen Ball, suing individually and on behalf of all others similarly situated, appeals from a summary judgment entered in favor of the County of Los Angeles (hereafter County) on her complaint alleging that she is entitled to recover interest on property taxes voluntarily refunded to her by the County. The refund was paid by the County upon receipt and verification of information that certain property owned by Ball and upon which she had paid tax was exempt from taxation. The appeal lies. (Code Civ. Proc., §§ 437c, 904.1, subd. (a).)
 

 The question presented by this appeal is whether a taxpayer is entitled to recover interest on tax payments erroneously collected by the County on exempt property when the County promptly refunds the erroneous payments upon being put on notice of its error.
 
 [1]
 
 We will answer this question in the negative. A taxpayer has no right to recover interest from the County unless interest is provided for by statute and such is not the case here.
 

 Facts
 
 [2]
 

 During the three-year period between 1971 and 1974 Ball owned real property which she leased to the City of Los Angeles as a library materials depository. Due to the nature of the property’s use, Ball was entitled to exemption of it from property taxation. (Former Rev. & Tax. Code, § 202, subd. (b).)
 
 [3]
 
 Nevertheless, no application for exemption
 
 *316
 
 from property taxes was filed with the County until April 10, 1974, and taxes were collected on the property in each of the three years.
 
 [4]
 

 The County processed and verified Ball’s exemption claim between April and July of 1974. The County did not dispute Ball’s right to a refund and on August 12, 1974, a warrant was issued to Ball refunding to her taxes paid on the exempt property between 1971 and 1974. No interest was included in the refund payment.
 

 Discussion
 

 1.
 
 County Is Liable for Interest Only Where Such Liability Is Created by Statute
 

 It is well established that there is no right to interest as payment for the use of money unless the right has been created by statute or by an express or implied contract. (45 Am.Jur.2d, Interest and Usury, §§ 34-35, pp. 39-40; cf. Civ. Code, § 1428.) There is a split of authority, however,. on the question of governmental liability for interest on tax refunds. In some jurisdictions it is held that there is an implied contract between the state and the taxpayer that the state will be liable for interest for the period of time it has the use of the taxpayer’s money. Therefore these jurisdictions have adopted the rule that a state or municipal corporation which must refund all or part of a tax which has been paid is liable for interest on the refund even in the absence of a statute which specifically authorizes payment of interest. (Annot., Right to Interest on Tax Refund or Credit in Absence of Specific Controlling Statute (1963) 88 A.L.R.2d 823, 825-827, § 2, and cases cited.) Other jurisdictions have rejected the implied contract theory and follow the rule that there is no liability for interest on a refund in the absence of a statute that specifically creates a liability for such interest.
 
 (Idem.,
 
 88 A.L.R.2d 823, 835-840, § 5, and cases cited.)
 

 Several rationales have been advanced for the rule requiring specific statutory creation of governmental liability for interest on tax refunds. The rule has been said to be based upon the doctrine that requires the state’s consent before the state becomes liable.
 
 (Columbia Steel Co.
 
 v.
 
 State
 
 (1949) 34 Wn.2d 700 [209 P.2d 482, 489]; cf. Sovereign Immunity
 
 *317
 
 Study (Feb. 1963) 5 Cal. Law Revision Com. Rep. (1963) pp. 17-21.) It is suggested that the rule is supported by the theory that a contract for interest is implied only when there is either delay or default on the part of the debtor and such delay or default will not be attributed to the government since it is presumed that the government always stands ready to pay what it owes promptly.
 
 (Monarch Mills
 
 v.
 
 South Carolina Tax Commission
 
 (1929) 149 S.C. 219 [146 S.E. 870, 872]; cf. Evid. Code, § 664;
 
 Tripp
 
 v.
 
 Swoop
 
 (1976) 17 Cal.3d 671, 683 [131 Cal.Rptr. 789, 552 P.2d 749].) The rule has been said to rest upon the practical consideration that the tax collector has no money to pay interest in the absence of statutory authority to establish a fund for that purpose.
 
 (Lakefront Realty Corporation
 
 v.
 
 Lorenz
 
 (1960) 19 Ill.2d 415 [167 N.E.2d 236, 240-241].) Finally, several jurisdictions found the rule to be required by state constitutional provisions prohibiting payments from the state treasury in the absence of a legislative act or resolution.
 
 (New England Mut. Life Ins. Co.
 
 v.
 
 Reece
 
 (1935) 169 Term. 84 [83 S.W.2d 238, 242];
 
 Kaemmerling
 
 v.
 
 State
 
 (1924) 81 N.H. 405 [128 A. 6, 7]; see Cal. Const., art. XVI, § 7;
 
 Richter
 
 v.
 
 Board of Supervisors
 
 (1968) 259 Cal.App.2d 99, 105 [66 Cal.Rptr. 52].)
 

 California has adopted the rule which requires a specific statutory provision to create governmental liability for interest. “[W]hatever the law may be elsewhere it has always been the rule in California that there is no implied contract of any kind that the state will pay interest on its indebtedness for it is liable only when made so by statute.”
 
 (Gregory
 
 v.
 
 State of California
 
 (1948) 32 Cal.2d 700, 703 [197 P.2d 728, 4 A.L.R.2d 924];
 
 People
 
 v.
 
 Union Oil Co.
 
 (1957) 48 Cal.2d 476, 480 [310 P.2d 409];
 
 Jones-Hamilton Co.
 
 v.
 
 Franchise Tax Bd.
 
 (1968) 268 Cal.App.2d 343, 350 [73 Cal.Rptr. 896].) Therefore the County
 
 [5]
 
 is liable to Ball for interest for the use of her money only if there is a specific statute authorizing the payment of interest on her refund.
 

 2.
 
 The Statutory Scheme Denies Interest on Ball’s Refund
 

 Ball contends that accrued interest on her tax refund is authorized by Revenue and Taxation Code section 5107 and former section 5143.
 
 [6]
 
 We disagree. We do not believe that these sections authorize the
 
 *318
 
 payment of interest by the County for the use of a taxpayer’s money. For reasons set forth below, we believe that these sections are merely general definitional sections which make clear that interest collected from the taxpayer in connection with tax payments (i.e. upon delinquent payment of taxes) will be included in any refund of those taxes. Specific sections of the Revenue and Taxation Code govern the payment of interest on tax refunds and indicate a comprehensive plan that denies interest on erroneously collected taxes during the period within which the taxpayer has failed to put the County on notice of the erroneous levy.
 

 A cardinal rule of statutory interpretation is that code sections are not to be read in isolation but construed in context.
 
 (Tripp
 
 v.
 
 Swoap, supra,
 
 17 Cal.3d at p. 679;
 
 Stanley
 
 v.
 
 Justice Court
 
 (1976) 55 Cal.App.3d 244, 249 [127 Cal.Rptr. 532].) Section 5107 and former section 5143 were once both part of the chapter of the Revenue and Taxation Code regarding refunds. Section 5107 remains a part of an article related to refunds generally. Section 5143 was part of the article regarding recovery of taxes paid under protest. These two sections have identical language. They both state that “as used in this article, ‘tax’ or ‘taxes’ include penalties, interest, and costs.”
 

 Although both these sections define “tax” as including interest, when read in context, it becomes clear that they refer only to the return of funds collected from the taxpayer. Whenever the word “tax” is used throughout the articles it is modified by the words “paid,” “collected,” “recovery,” or “refund.” Each of these modifiers implies that the “tax,” defined to include penalties, interest, and costs, has already been collected from the taxpayer by the County. Thus, these sections define only the scope of tax refunds.
 

 Such definition is necessary since tax refunds under section 5096 include both delinquent and nondelinquent taxes. The former may have interest, costs, and penalties added to the tax assessment itself. (See § 6591.)
 

 Likewise, an examination of the articles of which these two sections were a part reveals the existence of various sections expressly providing for the payment of interest on tax refunds. (Former §§ 5105, 5108, 5141;
 
 [7]
 
 Ehrman & Flavin, Taxing Cal. Property, §§ 494, 495, 497,
 
 *319
 
 pp. 474, 477, 479; (1976 supp.) § 496b, pp. 308-309; Marshall, State and Local Taxation, § 128, subd. (c), p. 166; (1977 pocket pt.) § 128, subd. (i), pp. 113-114.) While these last mentioned sections do not apply to the cases at
 
 [8]
 
 the existence of these specific sections negates the
 
 *320
 
 conclusion that a taxpayer’s entitlement to interest is provided for generally. Under the doctrine of “the expression of one excludes the other” the failure of the Legislature to provide expressly for the payment of interest on certain refunds while expressly providing for such payment on other refunds indicates an intention to exclude from the omitted refunds the obligation of interest.
 
 (Hill
 
 v.
 
 City of Eureka
 
 (1939) 35 Cal.App.2d 154, 158 [94 P.2d 1025];
 
 County of Madera
 
 v.
 
 Superior Court
 
 (1974) 39 Cal.App.3d 665, 670 [114 Cal.Rptr. 283].)
 

 These sections also reveal a comprehensive legislative plan which authorizes recovery of interest on a tax refund only where the county,
 
 with notice of an improper assessment,
 
 has failed to grant a tax refund.
 
 [9]
 
 Under these sections interest is denied on tax refunds unless and until the county receives notice of its error—notice given by refund claim, application for equalization, or payment under protest. Interest does not begin to accrue under former section 5105 until “the date of the filing of the claim for refund.” Interest accrues pursuant to former section 5108 from “the date of the payment of tax on property subject to an application for equalization of the assessed value” and not even then if the property is reassessed within 30 days. Former section 5141 authorized payment of interest “from the date of payment under protest.”
 

 Ball is denied interest on her tax refund under such a plan because she received her refund shortly after she presented her application for exemption to the County—shortly after the County had been given notice that these taxes had been erroneously collected from her.
 

 This plan is fair. The tax payments at issue were apparently collected by mutual mistake. Neither Ball nor the County seem to have been aware of the applicability of the exemption. Even where money has been improperly paid by one
 
 private party
 
 to another under a mutual mistake, interest will not begin to accrue until the mistake is discovered and a demand for restitution made. (Rest., Restitution, § 156, com. a, p. 619; 45 Am.Jur.2d, Interest and Usury, §§ 88, 90, pp. 79-81;
 
 Anderson
 
 v.
 
 Pacific Bank
 
 (1896) 112 Cal. 598, 603 [44 P. 1063];
 
 Bank of China
 
 v.
 
 Wells Fargo Bank & Union Trust Co.
 
 (9th Cir. 1953) 209 F.2d 467, 472.) Interest is not
 
 *321
 
 recoverable until and unless an individual has notice of his duty to make restitution.
 

 This rule applies with even greater force to funds erroneously held
 
 by the government
 
 due to the extent and nature of governmental activities. Indeed, where the government owes a
 
 liquidated claim
 
 upon a
 
 definite date
 
 that claim
 
 does not draw interest until demanded
 
 based “on the consideration that it would be inconvenient and burdensome for the officials of a municipality [or county] to seek its creditors and tender payment of their claims, and also that it would be oppressive and unjust to permit creditors of a municipality [or county] with good credit to turn claims into investments through omitting to present them and then collecting interest thereon.” (56 Am.Jur.2d, Municipal Corporations, Counties, and other Political Subdivisions, §§ 833, 842, pp. 823-824, 828;
 
 South Yuba Water Co.
 
 v.
 
 Auburn
 
 (1911) 16 Cal.App. 775, 780 [118 P. 101];
 
 Engebretson
 
 v.
 
 City of San Diego
 
 (1921) 185 Cal. 475, 479 [197 P. 651].) Even in jurisdictions which have adopted the rule that the state has an implied contract to pay interest for the use of tax funds which are eventually refunded, interest does not begin to accrue until the taxpayer puts the state on notice that tax payments have been erroneously collected by making a demand for a refund.
 
 (Girard Trust Co.
 
 v.
 
 City & County of Philadelphia
 
 (1948) 359 Pa. 319 [59 A.2d 124, 127-128]
 
 Van Hise
 
 v.
 
 Board of Sup’rs
 
 (1897) 21 Misc. 572 [48 N.Y.S. 874, 879] overruled on other grounds, 26 Misc. 750 [57 N.Y.S. 281, 288];
 
 Atwell
 
 v.
 
 Zeluff
 
 (1872) 26 Mich. 118, 119-120;
 
 Boston and Sandwich Glass Co.
 
 v.
 
 City of Boston
 
 (1842) 45 Mass. 181, 190.)
 

 Disposition
 

 The summary judgment for the County of Los Angeles is affirmed.
 

 Allport, J., and Potter, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied August 24, 1978.
 

 [1]
 

 Ball raises two additional contentions which need not be dealt with at length. First, she contends that two trial court rulings prior to the summary judgment—overruling demurrers raising the same issue raised by the County’s motion for summary judgment —established her right to interest on the refunds as the law of the case and therefore should have been determinative of the motion for summary judgment. The fatal defect in this contention is that this doctrine applies only to a prior decision in the case determined by an
 
 appellate court.
 
 The rulings of a
 
 trial court
 
 during an earlier stage in the proceeding are not conclusive. (See
 
 Davies
 
 v.
 
 Krasna
 
 (1975) 14 Cal.3d 502, 507 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; 6 Witkin, Cal. Procedure (2d ed. 1971) §§ 633-634,
 

 Ball’s second additional contention is that she is entitled to interest on her refund as a matter of her constitutional right to equal protection of the law. (See U.S. Const., 14th Amend.) In response we need only note that this contention is unsupported by apposite authority.
 

 [2]
 

 The parties agree that there is no dispute between them with regard to the facts.
 

 [3]
 

 This exemption has been recodified as Revenue and Taxation Code section 202, subdivision (a)(2). All references to former code sections refer to sections in effect at the time of the action at issue.
 

 [4]
 

 A request for refund of tax payments will be acted upon if the claim for refund is filed within four years after the making of the payment. (Rev. & Tax. Code, § 5097, subd. (b).) Legislation which became effective subsequent to the case at bench, however, now requires submission of an annual application for exemption and allows only a partial refund if the taxpayer fails to file a timely application. (Rev. & Tax. Code, §§ 255, 270; 58 Ops.Cal.Atty.Gen. 538, 539-541 (1975).)
 

 [5]
 

 Counties in California are subdivisions of the state. (Cal. Const., art. XI, § 1; Gov. Code, § 23000;
 
 Byers
 
 v.
 
 Board of Supervisors
 
 (1968) 262 Cal.App.2d 148, 155 [68 Cal.Rptr. 549].)
 

 [6]
 

 Section 5143 was subsequently repealed. (Stats. 1976, ch. 499, § 11, p. 1240.) All section references hereafter are to sections of the Revenue and Taxation Code unless otherwise noted.
 

 [7]
 

 These sections were subsequently repealed, but largely reenacted in other sections. (See §§ 5150, 5151.)
 

 Section 5105 stated: “In any action in which the recovery of taxes is allowed by the court, the plaintiff is entitled to interest on the taxes for which recovery is allowed at a
 
 *319
 
 rate per centum per annum equal to the rate per centum per annum that the defendant has received, through investment or by bank deposit, on the amount allowed and recovered as taxes from the date of the filing of the claim for refund to the date of entry of judgment, and such accrued interest shall be included in the judgment. This section shall not apply to taxes paid before the effective date of this act.”
 

 Current section 5150 was derived from former section 5105.
 

 Section 5108 stated:
 

 “Interest at the rate of 6 percent per annum shall be paid, when such interest is ten dollars ($10) or more, on amounts refunded under Section 5096.3 or 5096.7, or refunded as a result of the reduction of assessed value following an application for equalization by a board of equalization or by a court action to recover taxes. However, no interest shall be paid under the provisions of this section if the taxpayer has been given the notice required by Section 2635 and has failed to apply for the refund within 30 days after the mailing of such notice.
 

 “Interest allowed under this section shall be computed from the date of the recording of the deed to the public agency acquiring the property in eminent domain to the date of the filing of the claim for refund, or from the date of the payment of the tax on property subject to an application for equalization of the assessed value thereof to the date of the determination of the equalized value of the property; provided, however, that no interest shall be paid under the provisions of this section if such of time is 30 or less.
 

 “The interest charged shall be apportioned to the appropriate funds, as determined by the county auditor.”
 

 Current section 5151 was derived from former section 5108.
 

 Section 5141 stated:
 

 “If the court finds that the assessment complained of is void in whole or in part, it shall render judgment for the plaintiff for the amount of the taxes paid on so much of the assessment as is found to be void. In such event but only where taxes are paid after the effective date of this act, the plaintiff is entitled to interest on the taxes for which recovery is allowed at a rate per centum per annum equal to the rate per centum per annum that the defendant has received, through investment or by bank deposit, on the amount allowed and recovered as taxes from the date of payment under protest to the date of entry of judgment, and such accrued interest shall be included in the judgment. The taxes paid on so much of the assessment as is not found to be void shall constitute valid taxes which, if paid after delinquency, shall carry penalties, interests and costs.”
 

 Current sections 5144 and 5150 were derived from former section 5141.
 

 [8]
 

 Former section 5105 is inapplicable to the case at bench because it entitles a taxpayer to interest only on a refund obtained by court order and no resort to court action was required here in order that the taxpayer might recover her refund. The erroneously collected tax payments were promptly refunded by the County upon the filing of her application for exemption.
 

 Former section 5108 is inapplicable because it entitles a taxpayer to interest only on refunds that result from a reduction in assessed valuation following an application for equalization by a board of equalization or by a court action to recover taxes. The refund here was based upon an application for exemption rather than an application for equalization and was granted by the County rather than a board of equalization or court.
 

 Finally, former section 5141 is inapplicable because this section entitles a taxpayer to interest only where taxes were paid under protest and are later found by a court to be the result of a void assessment. The tax payments here were neither made under protest nor refunded by court order.
 

 [9]
 

 This legislative plan is continued in the recently enacted sections derived from the former sections of the Revenue and Taxation Code discussed above. (§§ 5150, 5151.) The importance of notice in the legislative plan is also seen in the requirement that a tax refund claim must be presented to and denied by the County before a court action for refund may be legally commenced. (§§ 5140, 5141, 5142, former §§ 5103, 5104;
 
 Signal Oil & Gas Co.
 
 v.
 
 Bradbury
 
 (1960) 183 Cal.App.2d 40, 43-56 [6 Cal.Rptr. 736].)