[No. B004877. Second Dist., Div. Three. July 24, 1985.]

ROSCOE TERRACE et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Ira Reiner, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Ronald A. Tuller, Assistant City Attorney, for Defendant and Appellant.

Costello & Walcher, Alan E. Walcher and Susan J. Williams for Plaintiffs and Respondents.

## OPINION

**DANIELSON, J.**—The City of Los Angeles (City) appeals from a judgment granting refunds of City business taxes to thirteen general partnerships and two corporations (respondents). We reverse the judgment.

### FACTS

The parties entered into a stipulation of facts for trial, which established that Lawrence M. Silk and Alex Gershunoff were the only partners of each of the 13 respondent partnerships, as well as the only stockholders in each respondent corporation. Each respondent partnership acquired and resold a single parcel of improved real property located within the City; each corporate respondent acquired and resold two such parcels. In each instance, the purchase price received by the respondent consisted in part of installment payments of principal and interest, amortized over a given term, and the respondent retained title to, or a security interest in, the subject property.

The identities of the respondents, the properties, and the financial arrangements made in connection with each sale, are set forth in the footnote which, by this reference, is incorporated into this opinion.[1]

---

[1]Roscoe Terrace is a partnership formed solely for the purpose of acquiring and selling Roscoe Terrace Apartments. The property was purchased on or about December 24, 1969. On the same date, the partnership entered into an installment land sale contract to sell the property for $370,600, and thereafter received installments payments of principal and interest from the purchasers through 1972.

Pagoda Garden Apartments is a partnership formed solely for the purpose of acquiring and selling the Pagoda Garden Apartments. The property was purchased on or about December 10, 1965, and sold for $1,295,000 on or about December 29, 1970, to a limited partnership in which Preferred Investment Corporation, one of the two respondent corporations, was the general partner. The purchaser gave the partnership a promissory note in the amount of the purchase price. The note was secured by a deed of trust on the property and required periodic payments of principal and interest. Thereafter the partnership regularly received such payments through 1972.

G.O.S. Associates is a partnership formed solely for the purpose of acquiring and selling the Tarzana Manor Apartments. The property was acquired in late December 1970, and apparently sold at around the same time, for $247,300, to a limited partnership in which Preferred Investment Corporation was the general partner. The parties entered into an installment land sale contract, pursuant to which the purchaser made periodic payments of principal and interest thereafter through 1972.

Burbank Development Company is a partnership formed solely for the purpose of acquiring and selling the Concord House Apartments. The property was acquired on or about January 24, 1972, and leased the same day to a limited partnership in which Preferred Investment Company was the general partner. The lessee was given an option to purchase the property for $526,300 by making installment payments of principal and interest. The option was exercised, and the partnership received monthly installment payments pursuant to the contract thereafter through 1972.

Willis Avenue Ownership Company is a partnership formed solely for the purpose of

Commencing in early 1973, the City conducted a series of audits which resulted in its determination that taxes were due and owing from each re-

---

acquiring, selling and syndicating the House of Lords. The property was acquired on or about November 13, 1970, and leased on the same day to a limited partnership in which Preferred Investment Company was the general partner. The lessee was given an option to purchase the property for $398,600 by making monthly installment payments of principal and interest. The option was exercised, and the purchaser thereafter made the required monthly installment payments until January 1973.

Windsor-Barclay Apartments is a partnership formed solely for the purpose of acquiring and selling the Windsor-Barclay Apartments. The property was purchased on or about August 10, 1967, and sold for $455,000 on or about July 31, 1970, on an installment land sale contract pursuant to which the purchaser made periodic payments of principal and interest through 1972.

Woodley Avenue No. 2 is a partnership formed solely for the purpose of acquiring and selling the Woodley Avenue Apartments. The property was acquired on or about December 13, 1971, and sold the same day for $718,000 to a limited partnership in which Preferred Investment Corporation was the general partner. The purchaser gave the partnership a promissory note secured by a deed of trust. Thereafter, the partnership received periodic payments of principal and interest from the purchaser until January 1973.

Oxnard Ownership Company is a partnership formed solely for the purpose of acquiring and selling the Oxnard Palms Apartments. The property was purchased on or about December 1, 1970, and sold the same day for $326,300 to a limited partnership in which Preferred Investment Corporation was the general partner. The sale was made pursuant to an installment land sale contract calling for monthly payments of principal and interest. The partnership received such payments thereafter through 1972.

Sundeck Apartments is a partnership formed solely for the purpose of acquiring and selling the Sundeck Apartments. The property was purchased on or about September 12, 1969, and sold for $181,300 on or about June 30, 1970. The sale was made pursuant to an installment land sale contract providing for monthly installment payments of principal and interest. The partnership received such payments thereafter through 1973.

Portofino-Oxnard-Chandler Company is a partnership formed solely for the purpose of acquiring and selling the Portofino and Chandler Apartments. The property was acquired on or about May 9, 1967, and sold on or about November 10, 1971, for $1,215,000, to a limited partnership in which Preferred Investment Corporation was the general partner. The purchaser gave a promissory note secured by a deed of trust, pursuant to which periodic payments of principal and interest were made to the partnership through 1973.

Parisian Apartments is a partnership formed solely for the purpose of acquiring and selling the Parisian Apartments. The property was acquired on or about December 24, 1969, and leased on or about May 1, 1971, to a limited partnership in which Preferred Investment Corporation was the general partner. The purchaser was given an option to purchase the property for $310,000. The option was exercised, and the partnership received monthly installment payments of principal and interest pursuant to the contract through 1973.

West Los Angeles Development Company is a partnership formed solely for the purpose of acquiring and selling the Casa Monica Apartments. The property was purchased on or about October 1, 1971, and sold the same day to a limited partnership in which Preferred Investment Corporation was the general partner. The sale was made pursuant to an installment land sale contract. Thereafter, the partnership received monthly installment payments of principal and interest from the purchaser through 1973.

Riverside Ownership Company is a partnership formed solely for the purpose of acquiring and selling the Riverside East/West Apartments. The property was acquired on or about July 20, 1971, and sold the same day for $821,000 to a limited partnership in which Preferred Investment Corporation was the general partner. The parties entered into a land sale contract pursuant to which monthly installment payments of principal and interest were made through 1973.

Gershunoff and Silk, Inc., a California corporation, was formed for the purpose of ac-

spondent. Each was notified that the City business tax, plus interest and penalties, was due on the interest portion of the installment payments received from the purchasers of the respective properties. Each respondent paid the amount demanded, and then filed a claim for refund, which was denied.

After exhausting their administrative remedies, respondents brought this action for recovery of the taxes paid and declaratory relief. The trial court entered judgment in respondents' favor, based on its finding that none engaged in any business which would subject it to taxation by the City. Respondents were also awarded prejudgment interest accruing from the dates upon which each paid the tax, interest and penalties assessed against it.

## CONTENTIONS

The City contends:

1. "Respondents engaged in the business described in Los Angeles Municipal Code section 21.108(b)."

2. "The business of advancing credit secured by a lien on real property sold by respondents subjects them to tax under Los Angeles Municipal Code Section 21.190."

3. "Interest on any refund commenced to accrue on the date of the claim for refund rather than the date of payment."

Respondents contend:

---

quiring, selling and syndicating the El Morocco Apartments, purchased on or about December 30, 1969, and the Orion Apartments, purchased on or about June 24, 1970. Each property was resold by the corporation on the same day that it was purchased. Each was sold to a limited partnership in which Preferred Investment Corporation was the general partner. The El Morocco Apartments were sold for $431,500, on a land sale contract pursuant to which monthly installment payments of principal and interest were paid to the corporation. The Orion Apartments were sold for $636,800. The purchaser gave a promissory note secured by a trust deed and providing for periodic payments of principal and interest. Following each of these sales, the purchaser made the payments called for through 1973.

Preferred Investment Corporation, a California corporation, was formed primarily for the purpose of acquiring, selling and syndicating the Pacifica Apartments, purchased December 31, 1969, and the Corteen Ten Apartments, purchased December 9, 1971. Each of these properties was resold on the date of its purchase to a limited partnership in which Preferred Investment Corporation was the general partner. The Pacifica Apartments were sold for $315,750, and the Corteen Ten Apartments for $128,000. In each instance, the purchaser gave a promissory note secured by a deed of trust and providing for periodic payments of principal and interest. The selling partnership received these payments regularly through 1973.

1. "Los Angeles Municipal Code Section 21.108(b) does not impose a section 21.190 tax upon interest payments received by a seller in connection with a secured installment sale of real property."

2. "The trial court correctly determined that no respondent was 'engaged in' any business described in Los Angeles Municipal Code section 21.108(b)."

3. "The trial court correctly held that prejudgment interest on respondents' refunds accrues from the date of payment of the tax, penalties and interest."

## DISCUSSION

*Persons Engaged in the Business of Advancing Credit in Connection With Sales of Real Property Are Subject to the Tax Provided for in Los Angeles Municipal Code Section 21.190*

The City's business tax provisions are found in Article 1 of chapter II, encompassing sections 21.00 through 21.198, of the Los Angeles Municipal Code. The tax is a "privilege tax imposed upon persons engaged in the businesses or occupations described in Sections 21.50 to 21.198, inclusive, of this Article [1] for the privilege of engaging in such businesses or occupations within the City. . . ." (Sec. 21.00(b).) "Person" is defined in subsection (d) of the same section as meaning "all domestic and foreign corporations, associations, syndicates, joint stock companies, partnerships of every kind, joint ventures, clubs, Massachusetts business or common law trusts, societies and individuals engaged in any business as defined herein, in the City . . . ." A "business" is "any business, commercial enterprise, trade, calling, vocation, profession or any means of livelihood, whether or not carried on for gain or profit." (Sec. 21.00(h).)

Subsection (i) provides: " 'Engaged in business' shall mean the conducting, operating, managing or carrying on of a business, whether done as owner, or by means of an officer, agent, manager, employee, servant, or lessee of any of them."

Every person engaged in any of the enumerated businesses or occupations must obtain a business registration certificate and pay a business tax in the amount prescribed in the applicable section. (Sec. 21.03(a).) These requirements are designed solely for the purpose of raising revenue. (Sec. 21.03(b).)

■ The City contends respondents are liable for payment of business taxes under section 21.108(b). Subsection (a) of that section levies a flat

annual rate of $750 on: ". . . each person engaged in the business of lending money, advancing credit, or lending credit or arranging for the loan of money or advancing of credit or lending of credit for and on his own behalf or on behalf of any other person as principal, agent or broker . . . ."

Subsection (b) provides: "The tax imposed under the provisions of subsection (a) shall not apply to the business of lending money or advancing credit or arranging for the loan of money or the advancing of credit as principal or agent, where the obligation to repay the money lent or debt incurred or to compensate for the advance of credit is secured by a lien on real property, or some interest in real property; nor shall the provisions of this section apply to the business of purchasing, either as principal or agent, any debt or evidence of debt secured by any lien upon real property; nor shall the provisions of this section apply to any transaction involving the purchase or sale of real property. All persons engaged in businesses such as are described in this subsection shall be subject to tax under Section 21.190."

Section 21.190 provides, in part: "(a) For every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically taxed by other provisions of this Article, the tax shall be $30.00 per year or fractional part thereof for the first $6,000.00 or less of gross receipts, plus $5.00 per year for each additional $1,000.00 of gross receipts or fractional part thereof in excess of $6,000.00."

Respondents argue that the last sentence of section 21.108(b), providing that persons engaged in the businesses described in that subsection shall be subject to taxation under section 21.190, is limited by the preceding phrase providing that the section shall not apply to any transaction involving the purchase or sale of real property, and that because the interest payments received by respondents were derived from sales of real property, section 21.190 does not apply. Respondents claim section 21.108(b) must be so read in order to be consistent with section 21.193, which imposes a business tax on persons "engaged in the business of developing and selling real property" (sec. 21.193(a)), then defines the quoted phrase in such a way as to make it clear that respondents are not subject to taxation under the section (sec. 21.193(b)), and, moreover, goes on to provide, in subsection (g) that "[t]he sale of any real property which would not subject the owner to taxation under the provisions of this section shall not subject said owner to taxation under the provisions of Section 21.190 of this Article."

First, respondents distort the plain import of section 21.108(b). The second and final sentence of subsection (b) provides that all persons engaged in the businesses described in the first sentence, which includes transactions

involving the purchase or sale of real property, shall be subject to tax under section 21.190.

Second, we fail to perceive the inconsistency urged by respondents. While they are not subject to taxation under section 21.190 on the proceeds of their sales of real property (sec. 21.193(g)), the tax here imposed was on interest they received by reason of their advancement of credit to the purchasers of real property, and, as such, was properly imposed pursuant to section 21.190 in accordance with the directive of section 21.108(b), provided respondents can be said to have *engaged in the business* of lending money or advancing credit.

*For Purposes of the City's Business Tax, Respondents Constitute a Single Entity Engaged in the Business of Advancing Credit*

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." (Corp. Code, § 15006, subd. (1).) Although the parties stipulated that thirteen of the named plaintiffs (respondents) were general partnerships, and that the remaining two named plaintiffs were corporations, they also stipulated that Silk and Gershunoff were the only partners of each of the respondent partnerships, as well as the sole shareholders of the corporate respondents. ■ Respondents' position is that despite this commonality of ownership, each partnership and corporation was a separate entity to be dealt with by the City taxing authorities without regard to the other partnerships or corporations and that the isolated transaction or two resulting in receipt of interest payments by each entity is not sufficient to constitute its engagement in the business of advancing credit.

We believe there was but one entity, a partnership, i.e., the association of Silk and Gershunoff, which carried on as coowners a business for profit, and that one of their business purposes was the advancement of credit to purchasers of their apartment buildings.

■ "The authorities do not clearly delineate when a partnership will be regarded as an aggregate of individuals and when it will be considered as a separate entity. An analysis of the cases demonstrates that the concept to be utilized in any given case is dependent largely upon policy considerations and upon which concept will achieve a fair and equitable disposition of the issues in controversy." (*Epstein* v. *Frank* (1981) 125 Cal.App.3d 111, 119 [177 Cal.Rptr. 831].)

While it is true, as respondents contend, that "[i]n the area of procedures, a partnership is treated substantially the same as a corporation, and an entity

concept predominates" (fn. omitted) (*Epstein* v. *Frank, supra,* 125 Cal.App.3d 111, 119; see also *H & M Associates* v. *City of El Centro* (1980) 109 Cal.App.3d 399, 409 [167 Cal.Rptr. 392]), we believe the issue before us requires a different analysis of both of these forms of business organization.

In *Park* v. *Union Mfg. Co.* (1941) 45 Cal.App.2d 401 [114 P.2d 373], the court cited with approval the holding in *Fidelity Phoenix Fire Ins. Co.* v. *Howard* (1938) 182 Miss. 546 [181 So. 846], "to the effect that a partnership with identical partners under one partnership name is the same partnership when conducting some other portions of its business under another name, and the separation of bookkeeping and of all operations and details thereof is immaterial, since ownership and ultimate control are still in the partners who compose the firm." (*Park* v. *Union Mfg. Co., supra,* 45 Cal.App.2d at p. 407.)

Also pertinent is *Boessow* v. *Johnson* (1935) 10 Cal.App.2d 578 [52 P.2d 505], where the court quoted with approval the trial court's opinion, which in turn quoted the decision in *Helvering* v. *Gregory* (1934) 69 F.2d 809, 810, in part as follows: " ' . . . "We agree with . . . the tax payer that a transaction, otherwise within the exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid, or, if one choose, to evade taxation. Anyone may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose the pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." [¶] Correctly applied, there can be no just complaint of the rule so announced; *however, the underlying facts, rather than the mere form of the transaction, must be given full consideration.* (Italics in original.) . . .' While, as we have said, one may, without moral turpitude, arrange his business so as to lessen the burden of taxation, it must be *bona fide,* and not merely colorable." (*Boessow* v. *Johnson, supra,* 10 Cal.App.2d at pp. 585-586.)

The foregoing reasoning applies with equal force to the corporate respondents. Thus, the United States Supreme Court stated in *Higgins* v. *Smith* (1939) 308 U.S. 473, 477 [84 L.Ed. 406, 411, 60 S.Ct. 355]: "A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages. [¶] On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard

the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation." (Fn. omitted.)

In *H. A. S. Loan Service, Inc.* v. *McColgan* (1943) 21 Cal.2d 518 [133 P.2d 391, 145 A.L.R. 349], two corporations engaged in making small loans in the Los Angeles area were considered as one for the purpose of determining that they, as a unit, were operating as a financial institution for state taxation purposes. The corporations ". . . 'were controlled by the same persons, the majority of the stock of each was owned by the same persons or their families, and the two corporations were formed and utilized to conduct the small loan business in a manner which was a subterfuge to avoid the California usury laws, as well as the Franchise Tax law; . . .'" (*Id.*, at p. 521.) The court stated, at page 523: "Under the circumstances here presented the two corporate entities were in fact one, or if they be considered separate, two, in effect, engaged in a single business. The corporate entity may be disregarded when it is used to evade the law." (See also *Estate of Bielec* (1972) 8 Cal.3d 213, 219, fn. 5 [104 Cal.Rptr. 516, 502 P.2d 12, 58 A.L.R.3d 1088].)

In the instant case, respondents alleged no legitimate reason for the employment of the multitude of entities here engaged in a common business. The pattern disclosed in the stipulation of facts for trial establishes as a matter of law that there existed but one business entity for municipal tax purposes. The respondents simply adopted a different appellation or cognomen for each set of transactions, but their partnership and their business activities continued unchanged.

The trial court erred in treating the named plaintiffs as separate entities for purposes of the business tax provisions of the Los Angeles Municipal Code. Upon remand, the aggregate yearly tax due to the City by reason of the business engaged in by Silk and Gershunoff, which partnership is to be treated as a single business entity, must be redetermined under section 21.190 of the code.

*The Trial Court Properly Determined the Dates of Commencement of Prejudgment Interest*

Because the tax obligation due must be recalculated, and may be lessened upon aggregation of the gross receipts of all of the named respondents, we consider the question of the date upon which interest on any refund commenced to run. The parties agree that in the event a refund is

due, the City is liable for prejudgment interest. (*Todd Shipyards Corp.* v. *City of Los Angeles* (1982) 130 Cal.App.3d 222, 226 [181 Cal.Rptr. 652].) The City, citing the decision of this court in *Ball* v. *County of Los Angeles* (1978) 82 Cal.App.3d 312, 320-321 [147 Cal.Rptr. 252] (cert. den. (1979) 439 U.S. 1116 [59 L.Ed.2d 75, 99 S.Ct. 1021]), contends interest commenced to run only upon the filing of respondents' claims for refund. The City's rationale is that it had no notice that the tax payments were involuntarily made until the refund claims were filed, and that the trial court's order "placed the City in a position of owing interest on overpayments that it was powerless to refund."

The taxpayer in *Ball* mistakenly paid property taxes on property she leased to the City of Los Angeles for use as a library materials depository. Because of the use to which the property was put, the taxpayer was entitled to an exemption from property taxation, but failed to file an application therefor for three years. When the application for exemption was filed, the county promptly refunded the taxes paid during the subject three-year period. We held the county was not obligated to pay interest on the refund, as it was received by the taxpayer shortly after the City had notice that the taxes had been erroneously collected. (*Ball* v. *County of Los Angeles, supra,* 82 Cal.App.3d at p. 320.)

Respondents cite the decisions in *Todd Shipyards Corp.* v. *City of Los Angeles, supra,* 130 Cal.App.3d 222, and *ITT Gilfillan, Inc.* v. *City of Los Angeles* (1982) 136 Cal.App.3d 581 [185 Cal.Rptr. 848], as supportive of their position that prejudgment interest commenced to run on the date of overpayment. In both of those cases, the disputed taxes were paid "involuntarily" or "under protest." (*Todd Shipyards Corp.* v. *City of Los Angeles, supra,* 130 Cal.App.3d at p. 244; *ITT Gilfillan, Inc.* v. *City of Los Angeles, supra,* 136 Cal.App.3d at p. 585.)

In the instant case, the disputed taxes were paid only upon assessment of delinquencies by the city clerk after examination of respondents' records and "full consideration of all information within his knowledge concerning the business and activities of the person assessed. . . ." (L.A. Mun. Code, §§ 21.15, 21.16.) There was not a mutual mistake as to any amount overpaid and subject to refund (cf. *Ball* v. *County of Los Angeles, supra,* 82 Cal.App.3d 312, 320); nor was the City unaware of the respondents' position. The trial court properly determined that prejudgment interest on any refund due commenced to run on the date of overpayment of the tax.

## DECISION

The judgment is reversed and the matter is remanded to the trial court, which is directed to recalculate the tax due the City from the aggregated

respondents, in accordance with the views expressed herein.

Klein, P. J., and Lui, J., concurred.